Olayiwola O. Oduyingbo (BBO No. 691768)
Odu@odulawfirm.com
Maria Cedeno Cassinelli, Esq. (BBO No. 712274)
mcedeno@odulawfirm.com
**ODU LAW FIRM, LLC**
888 Reservoir Avenue, Floor 2
Cranston, RI 02910
Telephone:     (401) 209-2029
Facsimile:     (401) 217-2299

*Attorneys for Plaintiff*
*Emma Justice*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| EMMA JUSTICE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>TUFTS MEDICAL CENTER, INC., *alias,*<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT FOR:**<br><br>1. **Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e** *et seq.***;**<br>2. **Violation of the Family and Medical Leave Act, 29 U.S.C. § 2601** *et seq.***;**<br>3. **Violation of the Massachusetts Paid Family and Medical Leave Act, Mass. Gen. Laws c. 175M § 1** *et seq.***;**<br>4. **Violation of the Americans with Disabilities Act, 42 U.S.C. § 12101** *et seq.***; and,**<br>5. **Violation of the Massachusetts Fair Employment Practices Act, Mass. Gen. Laws c. 151B § 1** *et seq.*<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

**TABLE OF CONTENTS**

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

Page

SUMMARY OF THE ACTION........................................................................1

PARTIES ......................................................................................................1

JURISDICTION ...........................................................................................1

VENUE .........................................................................................................2

FACTUAL BACKGROUND AND GENERAL ALLEGATIONS.................2

Emma Received An Inappropriate Gift From Supervisor And Took
  Intermittent Medical Leave Due to Her Disability Shortly
  Thereafter ..................................................................................3

Emma Met with Black Families and Her Coworkers Complained...........4

Emma is Treated Differently for Taking Intermittent Leave and
  Went on Continuous Leave for a Surgery.....................................5

Emma is Put on a Corrective Action Plan as Issues Continued to
  Escalate at Defendant..................................................................5

Emma Went to Defendant's DEI Department but DEI's
  Involvement Was Denied..............................................................7

Emma's Supervisor Told her to Start Looking for Another Job...............8

Emma Transitioned to a Part-Time Schedule as Defendant Treated
  Emma Differently than her White Colleagues and Failed to
  Uniformly Enforce Policies and Rules .........................................9

Defendant Terminated Emma's Employment .........................................9

Emma Exhausted her Administrative Remedies and Brings This
  Action.......................................................................................10

CLAIMS FOR RELIEF ...............................................................................10

PRAYER FOR RELIEF ..............................................................................14

DEMAND FOR JURY TRIAL ...................................................................15

i

**ODU LAW FIRM, LLC**
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

## COMPLAINT

### SUMMARY OF THE ACTION

1.    Plaintiff Emma Justice ("Emma") brings this action against Defendant Tufts Medical Center Inc. ("Tufts Medical Center" or "Defendant"), *alias*, to assert her rights and remedy the grave and rampant discriminatory violations committed by Defendant. Emma seeks compensatory and punitive damages, counsel fees and costs, and other equitable relief arising out of violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; the Massachusetts Paid Family and Medical Leave Act ("PFML"), Mass. Gen. Laws c. 175M § 1 *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; and the Massachusetts Fair Employment Practices Act ("FEPA"), Mass. Gen. Laws. c. 151B § 1 *et seq.* Emma hereby alleges as follows:

### PARTIES

2.    Plaintiff, Emma Justice, is a citizen and resident of Chelsea, Massachusetts.

3.    At all times relevant herein, Emma was employed by Defendant in the Commonwealth of Massachusetts.

4.    Defendant Tufts Medical Center Inc. is a corporation organized and incorporated under the laws of the Commonwealth of Massachusetts. It maintains its principal place of business at 800 Washington Street, Boston, MA 02111. Its registered agent is Zachary Redmond also located at 800 Washington Street, Boston, MA 02111.

5.    At all times relevant herein, Defendant was Emma's "employer" within the meaning of all relevant statutes.

### JURISDICTION

6.    The United States District Court for the District of Massachusetts has federal subject matter jurisdiction under 28 U.S.C. § 1331 because Emma asserts claims arising under federal law.  Specifically, this action arises under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*; and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*

1

7.      The United States District Court for the District of Massachusetts has supplemental jurisdiction under 28 U.S.C. § 1367 for the state law claims set forth herein, which arise out of a common nucleus of operative fact as the claims over which the Court has original jurisdiction.

8.      The United States District Court for the District of Massachusetts has personal jurisdiction over Defendants because they have sufficient minimum contacts in Massachusetts to render the exercise of jurisdiction by this Court both proper and necessary.

## VENUE

9.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant's principal place of business is in Massachusetts, and it conducts business in Massachusetts. Therefore, Defendant is deemed to reside in this District.

10.     Moreover, venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts and/or omissions giving rise to the claims asserted herein occurred in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

11.     Emma is a Black female with a disability. She has endometriosis, which is a painful condition that affects her reproductive system and causes very painful menstrual cramps as well as heavy bleeding which limits Emma's ability to work and perform manual tasks.

12.     Defendant hired Emma as a full-time Pediatric Speech Pathologist on or around January 6, 2020.  As a pediatric speech pathologist, Emma was required to meet with patients for speech sessions, complete school accommodation letters, conduct complex care meetings, and consult with nurses, among other duties. She spent a lot of her time doing both billable and non-billable tasks.

13.     Throughout the relevant period, Emma's work performance was satisfactory. Indeed, her 2020 performance review rated her performance as "highly effective". Despite this, Emma was subjected to disciplinary actions, but for the reasons stated herein, said corrective actions were wholly unsubstantiated.

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

2

COMPLAINT

**ODU LAW FIRM, LLC**
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

**Emma Received An Inappropriate Gift From Supervisor And Took Intermittent Medical Leave Due to Her Disability Shortly Thereafter**

14.     Throughout her employment, Emma was subjected to racial discrimination. As the only minority individual in the speech pathology staff for most of her employment, she was routinely subjected to incidents where her race was brought up by others.

15.     On April 27, 2021, Emma's supervisor, Jaime Guinta ("Jaime"), presented her with a deeply inappropriate birthday gift—a bottle of wine featuring a "Black Girl Magic" label. *See* Exhibit 1. This gesture was especially offensive given the lack of any established rapport between Jaime, a white supervisor, and Emma, a Black employee. The nature of their professional relationship had never suggested that such personal gifts were appropriate, and they had never engaged in meaningful discussions about Black culture. As the only Black individual in the speech pathology team, Emma felt uncomfortable and singled out by the gift, which she perceived as insensitive and inappropriate. Emma reported this incident of race discrimination, as well as various other instances of racial discrimination, to Michael Foley ("Michael"), the Director of Therapy. Michael stated that a meeting would be scheduled with the Diversity Equity and Inclusion ("DEI") Officer. However, no meeting was ever arranged.

16.     Emma did not feel comfortable reporting to Human Resources ("HR") because her HR contact, who was African American, was inexplicably terminated and replaced with a white male. Emma did contact the Employee Assistance Program, as she was advised. However, she was told that they do not assist with these matters. Despite raising concerns about incidents of racial discrimination with management, Emma's complaints went unaddressed.

17.      In or around May 2021, Emma requested and was approved for 6 months of intermittent FMLA leave due to her disability.

18.     At the time of her approval, Emma sent an accommodations request to her supervisor Jamie and to Employee Health Services wherein Emma requested a shift in her schedule to tend to the symptoms of her endometriosis. However, despite the reasonableness of her request, Emma's request was denied.

3

**Emma Met with Black Families and Her Coworkers Complained**

19.    During Emma's intermittent FMLA leave, Jaime called Emma for a meeting along with Michael. During that meeting, Jaime and Michael told Emma that Brenda Tanguay ("Brenda"), the Nursing Supervisor, had raised complaints about Emma meeting with Black families. Both Michael and Brenda, like Jaime, are Caucasian.

20.    Emma explained that the families who had met with her were complaining about the lack of representation of African American families. These families also complained that they felt that they were being mistreated by Brenda. Indeed, one family raised concerns of racial discrimination at Defendant. Emma appreciated these families' input and tried to reassure them. Emma told them that the team treats everyone the same. Still, Emma thought it was important for management to know about this, and to further explain why she was meeting with these families. However, these complaints were all disregarded by management.

21.    At this meeting with Jaime and Michael, Emma felt emboldened to mention that she also felt uncomfortable as the only Black individual in the staff. She felt her race helped with the families and patients because they felt they could confide in her; but also, isolated her as the only individual open to hear this criticism. Again, Michael told Emma that she would arrange a meeting between Emma and the Director of Equity and Inclusion to discuss these concerns, however, this meeting never happened.

22.    Around that same period during Emma's intermittent leave, Jaime called for another meeting with the four speech therapists on Emma's team, including Emma. At that meeting, Jaime told everyone that speech therapists needed to punch in once per day, and it did not matter what time they punched in at. Jaime also told them that as long as they punched in, they were allowed to take extended lunches or run errands when days were slow. This was already a practice among all other employees in the department with no discipline. Consistent with this policy, Emma started to punch in for the day without minding the time when she did so, so long as she punched in.

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

4

**Emma is Treated Differently for Taking Intermittent Leave and Went on Continuous Leave for a Surgery**

23.     Since Emma's request for intermittent leave, Michael and Jaime started treating her differently and holding her to different standards. For example, they disciplined Emma for doing things that other coworkers routinely did without discipline, including taking extended lunches on slow days or running errands during breaks.

24.     On September 3, 2021, Emma experienced an endometriosis episode that required her to leave work early due to pain and an excess of bodily fluids which required her to shower and change clothes. This episode led her to need surgery.

25.     From on or around October 18, 2021, until on or around December 7, 2021, Emma went on continuous FMLA leave due to a surgery.

**Emma is Put on a Corrective Action Plan as Issues Continued to Escalate at Defendant**

26.     Upon Emma's return from her continuous leave, conditions did not improve.

27.     On or around March 23, 2022, Jaime and Michael called Emma into a meeting to discuss a situation that allegedly occurred on March 4, 2022, where Emma was supposedly unreachable for 2 hours. Upon information and belief, this was reported by another speech therapist to Jaime and Michael.

28.     At that time, Emma explained to Jaime and Michael that she was not unreachable for two hours, but was speaking with a colleague, a Nurse Practitioner and her secretary during that time. Indeed, Emma clarified that she had worked beyond her schedule for that day and that since the patient in question was late, she begun completing another task in the treatment room while waiting for the patient.

29.     Emma repeatedly highlighted significant problems at the front desk which would have explained why she was "unreachable," including staff "forgetting" to page the clinician when patients checked in.

30.     At all times, Emma was available through email, phone, and Tiger text, Defendant's mobile text application.

**ODU LAW FIRM, LLC**
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

31.    Despite her explanation to Michael and Jaime, Emma was placed on a Corrective Action Plan ("CAP") for the supposed issue with attendance. This was the first disciplinary action lodged against Emma. *See* Exhibit 2.

32.    Emma expressed that she did not feel comfortable signing the CAP but was told that her signature was to acknowledge receipt rather than agreement. At that time, Emma also complained that when other employees violated that same policy regarding attendance, they had faced no repercussions. Instead of taking her concerns seriously, she was told in a dismissive manner that other employees' files were confidential and could not be discussed with her.

33.    On May 3, 2022, Jaime brought Emma into her office stating that they had to meet monthly pursuant to the CAP. At that impromptu meeting, Jaime told Emma that Emma had been late roughly 13 times. *See* Exhibit 3.

34.    At that meeting, Emma complained because her CAP was concerning the instances of her leaving the premises and being "unreachable" and not regarding alleged tardiness. She had not even been warned that there was an issue with her punching in or alleged tardiness. Emma also reminded Jaime that merely months ago Jaime had instructed the speech therapists, including Emma, that it was not necessary to punch in at a specific time so long as she punched in for the day, which is exactly what Emma had done. Moreover, Emma mentioned that those incidents where she had been "late"—never more than 26 minutes late—had been on days when Emma had no patients scheduled. She also complained, to no avail, that when her colleagues ran late, they were not subjected to the same disciplinary actions. For instance, when another speech language pathologists in the department, Krista Swanson or Nora Lavery, who were both white, were routinely and repeatedly late, they were only verbally spoken to but not put on a CAP like Emma was. Additionally, when Emma's white colleagues who were leading the appointment were late, the tardiness was unfairly attributed to Emma who was merely support staff.

35.     Seeing how disparately these rules were being imposed on her, Emma started documenting all the tasks that she performed in a day to show Jaime her work. Emma even offered Jaime the opportunity to shadow her to see how she spends her workdays. Despite this, Emma was still singled out and treated differently than her non-Black colleagues.

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

36.    On or around May 5, 2022, Jaime again called Emma into her office. This time the meeting was with Matt Shortelle ("Matt"), Senior Employee and Labor Relations Specialist. The meeting was regarding a meme that Emma had posted on her personal Facebook page addressing racism in the medical field. In that post, Emma did not reference Defendant. Furthermore, Emma's Facebook page was private.

37.    This meeting made Emma feel very uncomfortable as she was being confronted and forced to explain her private posts on her private page. Jaime and Matt read several of Emma's posts, including a quote: "Doctors are to Black women what police are to Black men."

38.    Emma was told that she was not in trouble for this, but that the staff member who had reported her felt uncomfortable and offended about her post. The identity of this individual was never disclosed to Emma.

39.    Emma explained again that she felt uncomfortable, as the only Black clinical employee in the department, and inquired about the purpose of the meeting. She was reassured that the meeting was not punitive and that she did not have to take down the post. Rather, she was only put on notice of the staff members' discomfort but was not disciplined for it.

40.    Emma was reprimanded even though she was not issued a written disciplinary action for the incident.

**Emma Went to Defendant's DEI Department but DEI's Involvement Was Denied.**

41.    Emma went to Diversity and Inclusion Officer, Rodrigo Monterrey ("Rodrigo"), to discuss her discomfort and feelings that she was being subjected to a hostile work environment. Of note, Rodrigo is Hispanic.

42.    Due to her hesitation to file a complaint with HR because her African American HR contact had been replaced for a white male, Emma decided to contact Employee Assistance Program expressing that she was under attack, particularly after the meeting regarding a meme on her private Facebook page. To Emma's surprise, the Employee Assistance Program indicated that they could not help her.

43.    Rodrigo advocated for Emma and reached out to HR, asking for permission to get involved in the issue to try to diminish some of the hostile work environment Emma had

7

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

denounced. Rodrigo's request to get involved and help was denied.

44.    In the meantime, shortly after this, the environment at work became even more hostile for Emma. For instance, in or around June 2022, Emma approached Jaime to ask for batteries, which were typically kept in a shared space. Instead of providing the batteries, Jaime told Emma that she was concerned about misuse of the batteries, so she had decided to keep them in her office. Jaime's comment was loaded with disdain towards Emma and implied that Emma would misuse the batteries.

### Emma's Supervisor Told her to Start Looking for Another Job

45.    In or around July 2022, Defendant decided to close Tufts Children's Hospital and get rid of some beds in Pediatrics. Jaime told Emma to start looking for another job.

46.    In distress, Emma reached out to Michael, who assured Emma that there were no layoffs planned, and that Emma had nothing to worry about. Despite this, Jaime continued to tell Emma on almost a daily basis that she should be worried about her job security.

47.    At the same time, the news of the hospital's closure disproportionately affected patients of color. Facing the unknown and loss of care, patients called Emma nonstop. Patients also started showing up to the campus with questions about what would happen to them. The constant interruptions and distractions affected Emma's ability to perform her job duties in a timely manner. However, the Defendant showed no concern about this.

48.    Instead, on July 13, 2022, Defendant issued a warning against Emma for not documenting her patients visits in a timely matter. *See* Exhibit 4. This CAP was due to alleged unsatisfactory work performance related to paperwork being late and also due to issues with tardiness and attendance. However, employees outside of Emma's protected classes had issues with attendance, tardiness, leaving early, extended lunches, and late submissions of paperwork, but **none** of them were put on CAPs and HR was not contacted for those instances. Instead, HR was involved with Emma's process.

49.    Moreover, this warning heavily decontextualizes Emma's performance and responsibilities. To start, Emma was the only one in her role whereas her colleagues had 4 individuals to perform only one role. Additionally, Emma covered seven departments while the

other therapists covered at most two.

**Emma Transitioned to a Part-Time Schedule as Defendant Treated Emma Differently than her White Colleagues and Failed to Uniformly Enforce Policies and Rules**

50.    Due to the stress and the hostile work environment at Defendant, Emma decided to drop to part-time status on or around July 20, 2022.

51.    In an overt effort to push Emma completely out, Jaime decided to reduce Emma's patient evaluation meetings from 2 hours to 1, making it more difficult for Emma to complete her patients' reports in time. Jaime also purposefully scheduled Emma's evaluations back-to-back, which further hindered Emma's ability to timely do her job as she was constantly trying to keep up with the meetings and the time constraints.

52.    In response to this, Emma asked for the opportunity to perform some of these tasks at home, particularly taking into consideration that the documentation for pediatrics takes significantly longer than those for adult patients. This request was denied.

53.    Furthermore, in an effort to establish fairness, Emma asked Jaime to ask every speech language pathologist to clock in and out every day, so that Jaime could confirm the hours worked and tasks performed by each pathologist. However, Jaime told Emma that was not an option.

**Defendant Terminated Emma's Employment**

54.    On or around August 17, 2022, Defendant terminated Emma's employment due to alleged unsatisfactory work performance and attendance. *See* Exhibit 5.

55.    That day, Emma was called into a meeting with Jaime and Michael, wherein she was told that she needed to leave the premises immediately and would have no access to clinical files from that moment on. Emma was even prohibited from speaking with physicians about the patients that she had seen earlier that morning.

56.    Jaime and Michael escorted Emma out of the building without allowing her the opportunity to gather her belongings. Emma was told that her belongings would be packed for her, and she could pick them up at a later date. Upon information and belief, no other employee had

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

9

been escorted out of the buildings for the same or similar issues as Emma.

**Emma Exhausted her Administrative Remedies and Brings This Action**

57.    On or about February 13, 2023, Emma filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD") and the United States Equal Employment Opportunity Commission ("EEOC"). In particular, Emma described how her termination violated the Title VII, FMLA, ADA, and FEPA.

58.    Defendant filed a Position Statement on May 31, 2023, which consisted of pretextual excuses.

59.    Emma field her Rebuttal on September 14, 2023.

60.    Thereafter, in accordance with 804 CMR 1.04(12), Emma filed to withdraw her Charge with MCAD and the EEOC, and instead assert her rights and remedy Defendants' violations in court. On October 31, 2024, the EEOC issued Emma a Dismissal. On October 1, 2024, the MCAD issued Emma a Dismissal. Emma has therefore timely and properly exhausted administrative remedies and satisfied all pre-conditions of filing this action.

**CLAIMS FOR RELIEF**

61.    Emma realleges and incorporates therein by reference paragraphs 1 through the immediately preceding paragraph, inclusive, as if fully set forth herein.

**First Claim for Relief**

*Race Discrimination – Violation of Title VII*

62.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, discriminated against Plaintiff on the basis of her race. Defendant treated Plaintiff less favorably than her white co-workers. Emma performed roles in 7 different departments but was held to different standards than her colleagues. She was disciplined harsher for issues that her colleagues were not. These acts were in violation of Title VII, thereby depriving Emma of rights secured under this Act, causing her to suffer damages as aforesaid.

**Second Claim for Relief**

*Race Discrimination – Violation of FEPA*

63.    Defendant, by its individual and/or concerted acts and/or omissions, including, but

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

not limited to those described herein, discriminated against Plaintiff on the basis of her race. Defendant treated Plaintiff less favorably than her white co-workers. Emma performed roles in 7 different departments but was held to different standards that her colleagues. She was disciplined harsher for issues that her colleagues were not. These acts were in violation of FEPA, thereby Emma of rights secured under this Act, causing her to suffer damages as aforesaid.

### Third Claim for Relief

*Disability Discrimination – Violation of FEPA*

64.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, discriminated against Plaintiff on the basis of her disability. Plaintiff's endometriosis is a handicap under FEPA because it substantially limits major life activities as it affects a major bodily function, the function of Emma's reproductive system and interferes with her ability to work and complete manual tasks. *See* Mass. Gen. Laws c. 151B § 1. Emma was able to perform the essential functions of her job. After her leave, she returned to work with no restrictions and proceeded to complete her tasks. Emma requested medical leave as a reasonable accommodation for this disability. She was granted leave, however, in violation of FEPA, Defendant terminated Emma because of her disability and/or her request for reasonable accommodation. Emma's close proximity between her leave and the adverse employment actions is evidence of pretext. Indeed, Defendant discriminated against Emma based on her disability and placed her on CAPs immediately after she returned from medical leave, in violation of FEPA. Defendant thereby deprived Emma of rights secured under this Act, causing her to suffer damages as aforesaid.

### Fourth Claim for Relief

*Disability Discrimination – Violation of ADA*

65.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, discriminated against Plaintiff on the basis of her disability. Plaintiff's endometriosis is a disability under the ADA because it substantially limits a major life activity as it affects a major bodily function, the function of Emma's reproductive system, and also interferes with her ability to work and complete manual tasks. *See* 42 U.S.C. §§ 12102(1), (2).

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

Emma was able to perform the essential functions of her job. After her leave, she returned to work with no restrictions and proceeded to complete her tasks. Emma requested medical leave as a reasonable accommodation for this disability. She was granted leave, however, in violation of the ADA, Defendant terminated Emma because of her disability and/or her request for reasonable accommodation. Emma's close proximity between her leave and the adverse employment actions is evidence of pretext. Indeed, Defendant discriminated against Emma based on her disability and placed her on CAP immediately after she returned from medical leave, in violation of the ADA. Defendant thereby deprived Emma of rights secured under this Act, causing her to suffer damages as aforesaid.

### Fifth Claim for Relief

*Retaliation – Violation of Title VII*

66.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, engaged in unlawful retaliation by placing and continuing Emma on CAPs when she complained of the race discrimination she endured. Defendant also terminated Emma for pretextual reasons when her white coworkers were not subjected to the same standards and disciplinary actions, including 3 CAPs. Defendant's actions violated Title VII and thereby deprived Emma of rights secured under this Acts, causing her to suffer damages as aforesaid.

### Sixth Claim for Relief

*Retaliation – Violation of FEPA*

67.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, engaged in unlawful retaliation by placing and continuing Emma on CAPs when she complained of the race and disability discrimination she endured. Defendant also terminated Emma for pretextual reasons when her Caucasian coworkers were not subjected to the same standards and disciplinary actions, including the 3 CAPs. Defendant's actions violated FEPA and thereby deprived Emma of rights secured under this Act, causing her to suffer damages as aforesaid.

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

12

**Seventh Claim for Relief**

*Retaliation – Violation of the ADA*

68.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, engaged in unlawful retaliation by placing and continuing Emma on CAPs when she complained of the disability discrimination she endured. Defendant also terminated Emma for pretextual reasons when her Caucasian coworkers were not subjected to the same standards and disciplinary actions, including the 3 CAPs. Defendant's actions violated the ADA and thereby deprived Emma of rights secured under this Act, causing her to suffer damages as aforesaid.

**Eighth Claim for Relief**

*Retaliation – Violation of FMLA*

69.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, engaged in willful and unlawful activity by retaliating against Emma for taking medical leave, in violation of the FMLA, 29 U.S.C. § 2601 *et seq*. The FMLA entitles eligible employees to twelve weeks of leave in a twelve-month period for, among other instances, for serious health conditions. 29 U.S.C. § 2612(a)(1). Emma availed herself of a protected FMLA right for her endometriosis which required continuing treatment by health care providers and surgery. She suffered an adverse employment decision, which was willful and/or in reckless disregard, because she was terminated for exercising her rights under the FMLA. Indeed, Emma was subjected to adverse employment action, including the 3 CAPs she was issued shortly after her leave; this close temporal proximity supports that Emma using FMLA leave was the cause of her termination. Defendant reasoning that Emma was terminated for "poor performance" is merely pretextual.

**Ninth Claim for Relief**

*Retaliation – Violation of the PFML*

70.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, engaged in unlawful activity by retaliating against Emma for taking medical leave, in violation of the PFML, Mass Gen. Laws. c. 175M § 1 *et seq*. The PFML

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

13

provides 20 weeks per year for medical leave, with a maximum of 26 weeks per year. Mass. Gen. Laws. c. 175M § 2. Emma availed herself of a protected PFML right for her endometriosis and surgery. She suffered an adverse employment decision because she was terminated for exercising her rights under the PFML. Emma was subjected to adverse employment action including the two CAP she was issued shortly after her leave; this close temporal proximity supports that Emma's use of PFML leave was the cause of her termination. Defendant reasoning that Emma was terminated for "poor performance" is merely pretextual. Moreover, under the PFML, any negative change to a term or condition of employment within 6 months following an employee's leave or restoration to a position shall be **presumed retaliation**. Mass. Gen. Laws. c. 175M § 9(c).

## Tenth Claim for Relief

### *Interference – Violation of the FMLA*

71.   Defendant, by its individual and/or concerted acts and/or omissions, including but not limited to those described herein, willfully and/or in reckless disregard interfered with Plaintiff's exercise of her lawful rights under the FMLA. *See* 29 U.S.C. § 2615. While Plaintiff was on leave, Defendant contacted her and required her to work by forcing her to attend meetings. This constitutes interference in violation of the FMLA and thereby deprived Emma of the rights secured under this Act and caused her to suffer damages as aforesaid.

## Eleventh Claim for Relief

### *Interference – Violation of the PFML*

72.   Defendant, by its individual and/or concerted acts and/or omissions, including but not limited to those described herein, interfered with Plaintiff's exercise of her lawful rights under the PFML. While Plaintiff was on leave, Defendant contacted her and required her to work by forcing her to attend meetings. This constitutes interference in violation of the PFML and thereby deprived Emma of the rights secured under this Act and caused her to suffer damages as aforesaid.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray and respectfully requests that this Court grant the following relief:

A. A declaratory judgment declaring that the acts and/or omissions of Defendant,

14

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

including, but not limited to those complained of herein, are in violation of the Title VII, FMLA, PFML, ADA, and FEPA;

B.  An injunction directing Defendants to take such affirmative action as is necessary to refrain from such conduct as is necessary to ensure that the effects of these unlawful employment practices are eliminated and not repeated;

C.  An injunction or other equitable relief, including, but not limited to, an award of back pay, front pay or reinstatement, and other compensation and/or benefits, and to make Emma whole for all earnings and benefits Emma would have received but for the violations;

D.  An award of all actual, general, special, incidental, statutory, punitive, compensatory, liquidated, consequential, and/or restitutionary damages to which Emma is entitled;

E.  An award of prejudgment interest, reasonable attorneys' fees, and costs; and

F.  Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues triable as of right.

Dated: December 30, 2024

**ODU LAW FIRM, LLC**

By:  /s/ *Olayiwola O. Oduyingbo*

**Olayiwola O. Oduyingbo, Esq.**
BBO No. 691768
Maria Cedeno Cassinelli, Esq.
BBO No. 712274
888 Reservoir Avenue, Floor 2
Cranston, RI 02910
Phone: (401) 209-2029
Fax: (401) 217-2299
Odu@odulawfirm.com

**ATTORNEYS FOR PLAINTIFF, EMMA JUSTICE**

**ODU LAW FIRM, LLC**
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

15

COMPLAINT

# EXHIBIT 1



# EXHIBIT 2

**Tufts** Medical Center

| Corrective Action |
| :---: |
| Plan |

**Employee Name:** Emma Justice       **Emp. ID #:** 415442       **Date:** 03/23/2022

**Hire Date:** 01/06/2020       **Department:** Speech Pathology       **Job Title:** Speech Pathologist

**Check one: Written Plan** ☒       Final Written Plan ☐

| | |
| :--- | :--- |
| **Aspect(s) of performance or behavior to be corrected** | You are being issued this written corrective action plan as a result of your unauthorized breaks, leaving Tufts Medical Center without any notice or authorization, and failure to work as scheduled.<br><br>On March 4, 2022, it was reported you were not available at the Medical Center from 11:00A to approximately 2:00P. You did not submit any MyTime forms for March 4, 2022 or notify any management personnel of any time away from the Medical Center on March 4, 2022.<br><br>When questioned about your availability on March 4, 2022, you stated you left the Medical Center from 12:00P to 1:30P on your lunch break. Your lunch break is thirty (30) minutes.<br><br>Your unauthorized time away from the Medical Center without any notice and failure to work as scheduled potentially negatively impacts the service we provide to our patients and is a violation of the Hospital's Attendance Expectations Policy and Hours of Work and Off-Shift Pay Differential Policy.<br><br>As a result of the above, you are being issued this written corrective action plan. |
| **Performance/behavior standard or expectation** | It is expected your attendance and hours of work will align with the Tufts Medical Center Attendance Expectations Policy and Hours of Work and Off-Shift Pay Differential Policy. I will review the policies with you and provide you with copies. |
| **Actions employee will take to improve performance or behavior** | The expectation is that you demonstrate significant improvement in your overall schedule dependability. The below expectations must be met:<br><br>• You are expected to arrive for work on time to your assigned workstation for the day ready to start work at your scheduled shifts.<br><br>• You are expected to work your entire scheduled shift.<br><br>• You are expected to notify your supervisor of any period of time away from the Medical Center in excess of your scheduled breaks.<br><br>• You are expected to complete a MyTime form for any time away from the Medical Center in excess of your scheduled breaks<br><br>• Follow departmental procedures of notifying your |

(2) hours before the start of your shift.

If there are personal issues that may be impacting your ability to perform your job, the Employee Assistance program or Human Resources is available to you.

| | |
|---|---|
| **Actions supervisor or manager will take to help employee improve performance or behavior** | I have provided you with a copy of the Attendance Expectations Policy and Hours of Work and Off-Shift Pay Differential Policy. I will monitor your progress and address any issues that may arise with prompt feedback. |
| **Time frame and measurements of improvement** | Immediate and sustained improvement is required to avoid further corrective action. Failure to meet the above performance expectations relating to your schedule dependability will result in further corrective action. |
| **Employee comments** | |

Failure to meet the standards established will result in additional corrective action, up to and including termination without additional notice.

Approved by Supervisor/Manager: _____  Date: 3/28/22

I understand the expectations described above and have received a copy of this document.

Employee Signature: _____  Date: 3/28/22

You have the right to appeal this Corrective Action Plan (refer to Appeal Process Policy). If you want to file a formal appeal, you must do so in writing within 5 days of receipt of this document. Forward your request for an appeal to Human Resources.

Reviewed by Human Resources: _____  Date: 03/31/2022

Original – Human Resources          Copy – Employee          Copy – Supervisor/Manager

# EXHIBIT 3

**Tufts** Medical Center

| | Corrective Action |
|---|---|

**Employee Name:** Emma Justice          **Emp. ID #:** 415442          **Date:** 05/03/2022

**Hire Date:** 01/06/2020          **Department:** Speech Pathology          **Job Title:** Speech Pathologist

**Check one:** Written Plan ☐          **Final Written Plan** ☒

| Aspect(s) of performance or behavior to be corrected | You are being issued this final corrective action plan as a result of your continuing tardiness.

On March 28, 2022, you were issued a written corrective action as a result of your violations of the Attendance Expectations Policy and Hours of Work and Off-Shift Pay Differential Policy.

Since March 29, 2022, you have been more than five (5) minutes late for work on thirteen (13) occasions. You have been tardy on:
- March 29, 2022 (10 min.);
- April 7, 2022 (9 min.);
- April 8, 2022 (16 min.);
- April 12, 2022 (12 min.);
- April 14, 2022 (26 min.);
- April 15, 2022 (7 min.);
- April 19, 2022 (14 min);
- April 20, 2022 (6 min.);
- April 21, 2022 (29 min.);
- April 26, 2022 (7 min);
- April 27, 2022 (8 min.);
- April 29, 2022 (10 min.); and,
- May 3, 2022 (22 min.).

When questioned about your tardiness, you have cited traffic concerns.

As a speech pathologist, your failure to work as scheduled violated the Hospital's Attendance Expectations Policy and negatively impacts the service we provide to our patients.

As a result of the above, you are being issued this final corrective action plan. |
|---|---|
| Performance/behavior standard or expectation | The Tufts Medical Center standard for providing high quality patient care is to follow established departmental and hospital policies regarding attendance expectations and arriving to work on time.

It is expected your attendance will align with the Attendance Expectations policy of Tufts Medical Center. I will review the |

policy with you and provide you with a copy.

| | |
|---|---|
| **Actions employee will take to improve performance or behavior** | The expectation is that you demonstrate and sustain significant improvement in your overall schedule dependability. The below expectations must be met:<br><br>• Keeping your unplanned absences within Attendance Expectations Policy standards.<br><br>• Arrive for work on time and prepared to begin your scheduled shift at your scheduled start time.<br><br>• Follow departmental procedures of notifying your supervisors of any changes in your schedule.<br><br>If there are personal issues that may be impacting your ability to perform your job, the Employee Assistance program or Human Resources is available to you. |
| **Actions supervisor or manager will take to help employee improve performance or behavior** | I have provided you with a copy of the Attendance Expectations Policy. I will monitor your progress and address any issues that may arise with prompt feedback. |
| **Time frame and measurements of improvement** | Immediate and sustained improvement is required to avoid further corrective action. Failure to meet the above performance expectations relating to your schedule dependability will result in termination.<br><br>This corrective action plan will be active for twelve (12) months. |
| **Employee comments** | |

Failure to meet the standards established will result in additional corrective action, up to and including termination without additional notice.

Approved by Supervisor/Manager: _Jaime Guinta_    Date: _5/3/2022_

I understand the expectations described above and have received a copy of this document.

Employee Signature: _Emma Juarez_    Date: _5/3/2022_

You have the right to appeal this Corrective Action Plan (refer to Appeal Process Policy). If you want to file a formal appeal, you must do so in writing within 5 days of receipt of this document. Forward your request for an appeal to Human Resources.

Reviewed by Human Resources: _____    Date: _05/04/2022_.

Original – Human Resources          Copy – Employee          Copy – Supervisor/Manager

# EXHIBIT 4

Tufts Medical Center



**Corrective Action**

**Employee Name:** Emma Justice    **Emp. ID #:** 415442    **Date:** 07/13/2022

**Hire Date:** 01/06/2020    **Department:** Speech Pathology    **Job Title:** Speech Pathologist

**Check one: Written Plan** ☒    **Final Written Plan** ☐

| Aspect(s) of performance or behavior to be corrected | |
|---|---|
| | You are being issued this written corrective action plan as a result of your unsatisfactory performance.

On March 16, 2022, during our staff meeting, we reviewed the department's expectation that all documentation be completed within seventy-two (72) hours of a patient visit as part of Epic implementation and to ensure billing.

On March 21, 2022, you were issued a Written Verbal Warning as a result of your unsatisfactory performance and failure to complete a documentation in a timely manner.

In my July 1, 2022 email, because your documentation for one June 28, 2022 patient visit and one June 29, 2022 patient visit had not been completed, I reminded you all patient documentation must be completed before end of business on Friday, July 1, 2022 as a result of the Monday, July 4, 2022 holiday and your scheduled vacation on Tuesday, July 5, 2022. On Friday, July 1, 2022, you had one (1) patient visit. On Friday, July 1, 2022, you were scheduled for and paid for eight (8) hours of work.

You did not complete the documentation for the June 29, 2022 patient visit or the July 1, 2022 patient visit before end of business on Friday, July 1, 2022. You were out of work on July 4, 2022 and July 5, 2022.

On July 6, 2022, we met to review your failure to complete all patient documentation before close of business on July 1, 2022. You stated you were unable to complete the documentation as a result of being upset about the Tufts Medical Center pediatrics closure.

On July 6 and 7, 2022, you were scheduled for eight (8) hour |

| | |
|---|---|
| | shifts. You saw three (3) patients on July 6, 2022. You saw four (4) patients on July 7, 2022. You failed to complete patient documentation for a patient on July 6, 2022 before end of business on July 7, 2022. You were on vacation on Friday, July 8, 2022. At 11PM on July 10, 2022, you emailed me you had mistakenly failed to complete documentation for a July 6, 2022 patient. Given the number of patients you saw on July 6 and 7, 2022, you had sufficient time to complete your documentation for all patients before leaving on July 7, 2022.<br><br>Your unsatisfactory performance and failure to complete documentation in a timely manner continues to negatively impact the service we provide to our patients and providers.<br><br>As a result of the above, you are being issued this written corrective action plan. |
| **Performance/behavior standard or expectation** | The expectation is that you demonstrate immediate, consistent and sustained improvement in your job performance. As a speech pathologist, it is important you completely and accurately complete all your duties in a timely manner.<br><br>In addition, we will meet to discuss expectations for work to be completed when the volume of patients is low. |
| **Actions employee will take to improve performance or behavior** | The expectation is that you demonstrate significant improvement in your overall performance. The below expectations must be met:<br><br>• You must complete all assigned duties thoroughly and correctly and in a timely manner.<br><br>• You must complete all patient documentation within seventy-two (72) hours of seeing a patient.<br><br>• You must complete all outstanding patient documentation before vacations or time off.<br><br>• You must adhere to all Tufts Medical Center policies, procedures, and protocols.<br><br>• If you feel that you are unsure of how to best handle a situation to resolve differences, you are expected to seek assistance from a Supervisor.<br><br>If there are personal issues that may be impacting your ability to perform your job, the Employee Assistance program or Human Resources is available to you. |
| **Actions supervisor or manager will take to help employee improve** | I have reviewed performance expectations with you and provided you with a copy of the Employee Conduct and Progressive |

| performance of behavior. | Discipline policy.  I will monitor your performance and provide you with feedback on your progress. |
|---|---|
| Time frame and measurements of improvement? | Immediate and sustained improvement for the above performance issues is expected.  Failure to meet the above performance expectations will result in further corrective action. |
| Employee comments | |

Failure to meet the standards established will result in additional corrective action, up to and including termination without additional notice.

Approved by Supervisor/Manager: _Jane Guite_     Date: _7/13/12_

I understand the expectations described above and have received a copy of this document.

Employee Signature: _Emma Juhm_     Date: _7/13/22_

You have the right to appeal this Corrective Action Plan (refer to Appeal Process Policy). If you want to file a formal appeal, you must do so in writing within 5 days of receipt of this document.  Forward your request for an appeal to Human Resources.

Reviewed by Human Resources: _____     Date: _7/20/22_

Original – Human Resources     Copy – Employee     Copy – Supervisor/Manager

# EXHIBIT 5



| Termination Notice |
| --- |

**Employee Name:** Emma Justice       **Emp. ID #:** 415442       **Date:** 08/17/2022

**Hire Date:** 01/06/2020       **Department:** Speech Pathology       **Job Title:** Speech Pathologist

| Aspect(s) of performance or behavior to be corrected | |
| --- | --- |
| | Your employment with Tufts Medical Center is terminated effective today, August 15, 2022 as a result of your unsatisfactory performance and unsatisfactory attendance. |
| | **Attendance** |
| | On May 3, 2022, you were issued a final corrective action plan as a result of your unacceptable schedule dependability in violation of Tufts Medical Center's Attendance Expectations policy. |
| | Beginning July 6, 2022, you agreed to a change in your work schedule to Mondays and Thursdays, from 8A until 12P, and Tuesdays and Wednesdays, from 7:30A to 4P. Between July 6, 2022 and August 10, 2022, you did not express any confusion, or fail to work as scheduled. |
| | You were on a scheduled vacation from July 29, 2022 until August 7, 2022. On August 8, 2022, you called out for your first scheduled shift after your vacation. On August 10, 2022, you were scheduled to work at 7:30A. You arrived for work at 8A. |
| | When asked about arriving late for work, you said your dog had kennel cough causing you to not sleep well and that you were confused about your scheduled start time. |
| | **Performance** |
| | On July 20, 2022, you were issued a written corrective action as a result of your unsatisfactory performance. Specifically, your failure to complete required medical documentation within seventy-two (72) hours of a patient visit. |
| | On July 28, 2022, you left work for the week without completing a medical note from a patient visit on July 25, 2022. You completed the medical note for the July 25, 2022 visit at 11P on July 28, 2022. |
| | When we met to discuss the above concerns, you stated you did not have sufficient time to document due to your new schedule and the unique demands of your pediatric practice. During the week of July 25, 2022, you met with nine (9) patients. Based on your scheduled patient visits and your agreed upon work hours, |

|  | you had approximately sixteen and one half (16.5) remaining non patient facing work hours to complete the required documentation.

Your failure to work as scheduled negatively impacts the service we provide to our patients and staff. Your failure to complete the required medical documentation negatively impacts the service we provide our patients and the operations of the Medical Center.

As a result of the above, your employment with Tufts Medical Center is terminated effective today, August 15, 2022. |

Approved by Supervisor/Manager: _____    Date: 8/17/22

Signature of Second Manager: _____    Date: 8/17/22
(If necessary)

I understand the expectations described above and have received a copy of this document.

Employee Signature: _____    Date: _____

Reviewed by Human Resources: _____    Date: 8/17/22

Original – Human Resources          Copy – Employee          Copy – Supervisor/Manager

Refused to sign received August 17 2022